Rich, Judge,
delivered the opinion of the court:
This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner’s rejection of claims 23, 25-28, 30 and 31 of the application of Arthur L. Hall and Charles A. Stokes entitled “Recovery of Pigments from Aerosols,” serial No. 102,812, filed July 2,1949.
The application claims a process of recovering flocculent carbon black or other finely divided pigment from furnace gases and converting it into pellet form convenient for handling and transportation.
Claim 28, one of the more limited claims, is descriptive of the invention and reads as follows:
28. The process of recovering furnace carbon black from reaction product gases which comprises the steps of conducting furnace reaction product gases with carbon black suspended therein through a dry collection zone thereby separating a portion of the black from the gases, then passing the gases through a water scrubbing zone thereby washing the greater proportion of the remaining black out of the gases and forming a carbon black-water slurry, concentrating the slurry to a solids content of 2-10% by weight, mixing a wetting and dispersing agent therewith, conducting the previously separated dry black and the slurry to a pelleting zone in proportions such that the ratio of carbon black to water therein ranges from 3:1 and 1:3 by weight, and mechanically agitating the black until it is converted into discrete self-sustaining pellets.
*936 The references replied upon are:
Lewis, 1,801,436, Apr. 21,1931.
Skoog et al., 2,213,056, Aug. 27,1940.
Offutt, 2,228,704, Jan. 14,1941.
Hedberg et al., 2,273,194, Feb. 17,1942.
Tbodos, 2,457,963, Jan. 4,1949.
Potts (Britisli) 429,088, May 23,1935.
In essence, the procedure is to burn some material such as natural gas in a starved oxygen atmosphere and pass the escaping gases therefrom, carrying flocculent carbon, through a series of conventional cyclone separations and thereafter washing the gaseous stream in a conventional scrubber. The slurry produced from the scrubber is employed as a source of the requisite liquid for a conventional pelleting operation in which the dry product of the cyclone separation is combined therewith. A wetting agent may be employed in the latter process.
The board affirmed the rejection of all the claims as unpatentable over Lewis or Hedberg et al. in view of Thodos, Offutt or Skoog et al. The Potts British patent was relied upon to demonstrate the use of a wetting agent in the formation of a slurry of carbon black.
The Lewis and Hedberg et al. patents show the removal of finely divided particles from a gaseous suspension by passing it through a water spray. Hedberg et al. appears to be more concerned with cleaning gases where as Lewis’ particular object is the removal of flocculent carbon from the gas stream. The carbon is removed by passing the gases through a series of collectors. After the removal of the carbon, the slurry of Lewis is passed through a filter press wherein cakes are formed and later submitted to a conventional drying process.
The patents to Skoog et al., Offutt and Thodos disclose the preparation of carbon black pellets. Appellants admit that the pelleting methods they use are old and we need not consider them beyond noting that a certain amount of liquid, such as water, is needed to form pellets and dry fluffy carbon must be fed into the process.
The Potts reference discloses that a stable aqueous suspension of carbon black and water may be obtained with or without a surface tension depressing agent. As a specific example the reference teaches 15 to 25 parts of carbon black and 85 to 15 parts of water containing the wetting agent.
As we view the case, it is not necessary to further discuss the other references.
We are of the opinion that appellants’ claimed process is un-patentable over Lewis in view of Skoog et al. and shall therefore only consider appellants’ arguments directed toward those references.
*937 Appellant contends, that Lewis is not concerned with making pellets, but merely with making filter cakes. ■ As we view the Lewis reference it teaches exactly what it is relied on for, viz: the removal of carbon black from a gaseous stream by a series of conventional separators, and counsel for appellants at oral argument admitted this to be old and no part of the invention. What Lewis and appellants eventually do with the product of the separators is of no weight on the question of whether Lewis is an applicable reference. ¡
In their brief, counsel for appellants admit that the Skoog et ah reference teaches pelleting involving the introduction of water, a wetting agent, and dry flocculent carbon which are admixed to form a moist substance, and the later admission of more dry carbon to that moist substance. The argument appears to be over the fact that Skoog does not call his moist substance a slurry, and that the reference does not disclose that the apparatus could be utilized to handle a slurry.
While slurry is usually taken to mean a fluid mixture of solid and liquid, thin and watery, which is its dictionary meaning, appellants, exercising their privilege of being their own lexicographers, have used it in a different sense. In their application they say,
While the process of oar invention * * * is best adapted to the use of a pumpable and sprayable slurry * * * it may be adapted to the use of slurries wherein the weight of the solids is nearly equal to that of the liquid * * *. A heavy slurry not easily pumpable may be screw conveyed. * * * The use of such slurries of heavy solids concentration is within the contemplation of our invention. [Emphasis ours.]
Earlier they pointed out, picturesquely,
A pound of feathers mixed with as much as two gallons of water, representing a 6% concentration on a weight basis, will make an extremely doughy paste. The same is true, for instance, of carbon black, such that a 6% carbon black slurry has the consistency of heavy cream. A 10% slurry is highly viscous with a consistency comparable to petrolatum * * *. [Emphasis ours.]
What then of a “slurry” having a carbon content nearly equal by weight to.the water? Skoog discloses “equal amounts by weight of carbon black and water” fed to his pelleting machine. That is “slurry” by appellants’ standards.
Counsel for appellants urge that the slurry composition must be within a critical range and refer in their brief to a portion of his application to substantiate the point. This argument does not impress us since we note the very portion relied on discloses a lack of criticality, 2-10% being the range claimed and the specification showing that the process “may be carried out employing any pumpable and sprayable slurry” and that “a slurry of more than 30% is not readily pumpable.”
*938 Summarizing, appellants are employing in their process and admittedly old carbon black recovery process ending with a water scrubbing step which produces a slurry. They argue the prior art references do not show “dividing this entire production into a slurry component and a dry component and utilizing these components to produce a pelletized product.” But division is inherent in the old recovery steps they elected to use. To pelletize is nothing but á commercial election of product form. Having made that election, nothing could be more obvious than to use the slurry as the source of the essential wetted carbon.
We are of the opinion that the Lewis teaching of removal of carbon black from a gaseous stream may be combined with the Skoog teaching of pellet formation to anticipate the instant application.
The decision of the board is affirmed.
Jackson, J., retired, recalled to participate was present at the argument of this case but did not participate in the decision.